UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY F. LARKIN,<br><br>    Plaintiff,<br><br>v.<br><br>ELIZABETH J. CABRASER, et al.,<br><br>    Defendants. | Case No. 24-cv-00190-HSG<br><br>**ORDER GRANTING MOTION TO TRANSFER; DENYING REMAINING MOTIONS AS MOOT**<br><br>Re: Dkt. Nos. 34, 36, 40, 41, 44 |

Plaintiff Billy F. Larkin has filed a complaint against the attorneys and law firms involved in the Deepwater Horizon Economic and Property Damages Settlement ("DHEPDS"). Plaintiff alleges that the manner in which Defendants structured the DHEPDS constituted fraud, legal malpractice, and breach of contract, which led to the improper denial of his DHEPDS claim. *See generally* Dkt. No. 1. Now pending before the Court are the following motions: (1) Defendants' motion to transfer the action to the Eastern District of Louisiana, or for dismissal, Dkt. No. 34; (2) Plaintiff's request to be relieved of service, Dkt. No. 36; (3) Plaintiff's motion to stay proceedings pending appellate review, Dkt. No. 40; (4) Plaintiff's motion for contempt and sanctions, Dkt. No. 41, and (5) Plaintiff's motion for a preliminary injunction, Dkt. No. 44. For the reasons set forth below the Court GRANTS the motion to transfer, Dkt. No. 34; and DENIES the remaining motions (Dkt. Nos. 36, 40, 41, 44) as moot.

## BACKGROUND

**I.    MDL 2179: April 20, 2010 Deepwater Horizon / Macondo Well Blowout and Oil Spill**

This action arises out of the April 20, 2010 Deepwater Horizon / Macondo Well blowout and oil spill, which is the subject of the Multidistrict Litigation No. 2179 ("MDL 2179") in the Eastern District of Louisiana. The attorneys and law firms named as defendants in this action are

members of the court-appointed plaintiffs' leadership and settlement class counsel in MDL 2179. Dkt. No. 34 at 5.

The MDL Court has summarized the factual and procedural history of MDL 2179 as follows:

> On April 20, 2010, a blowout, explosions, and fire occurred aboard the semi-submersible drilling rig DEEPWATER HORIZON as it was preparing to temporarily abandon a well, known as Macondo, it had drilled approximately 50 miles off the coast of Louisiana. These events resulted in eleven deaths, multiple injuries, and a massive oil spill in the Gulf of Mexico. Litigation followed. On August 10, 2010, the Judicial Panel on Multidistrict Litigation created Multidistrict Litigation No. 2179 ("MDL 2179") pursuant to 28 U.S.C. § 1407 and assigned it to this Court. Nearly all federal cases resulting from the DEEPWATER HORIZON/Macondo Well blowout and oil spill have been consolidated with MDL 2179.

*In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2020 WL 3606261, at *1 (E.D. La. July 2, 2020). British Petroleum ("BP") was designated by the Coast Guard as a "responsible party" for the DEEPWATER HORIZON/Macondo Well oil spill, and BP established a process to receive and pay claims arising from the oil spill, which ultimately resulted in the 2012 entry of a class-wide settlement, the Deepwater Horizon Economic and Property Damages Settlement ("DHEPDS"), which was negotiated by Defendants. The DHEPDS resolved claims for economic loss and property damage resulting from the Deepwater Horizon incident. The DHEPDS certified a class for settlement purposes only, consisting of private individuals and businesses defined by geographic bounds and the nature of their loss or damage. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2017 WL 4764365, at *2–3 (E.D. La. Oct. 20, 2017); *see generally In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 917 (E.D. La. 2012). The DHEPDS was administered by the Court Supervised Settlement Program ("CSSP"). The MDL court's December 21, 2012 Order and Judgment Granting Final Approval of Economic and Property Damages Settlement and Confirming Certification of the Economic and Property Damages Settlement Class expressly provided that DHEPDS was the exclusive remedy for all class members and expressly reserved continuing and exclusive jurisdiction over the settlement:

> This Settlement Agreement shall be the exclusive remedy for any and all Released Claims by or on behalf of the Economic Class, Plaintiffs or any and all Economic Class Members against any and all Released Parties, and the Economic Class, Plaintiffs and Economic Class Members shall not recover, directly or indirectly, any sums from any Released Parties for any Released Claims other than those received for the Released Claims under the terms of the Settlement Agreement. . . . As noted in paragraph 17, infra, the Court retains continuing and exclusive jurisdiction to interpret, implement, administer and enforce the Settlement Agreement, in accordance with its terms, and to implement and complete the claims administration and distribution process, in accordance with the Settlement Agreement, for the benefit of the Class.
>
> The Court expressly incorporates the terms of the Settlement Agreement in this Order and Judgment and further orders that the Court retains continuing and exclusive jurisdiction over the Parties, the Economic Class Members, the Court Supervised Settlement Program and the Settlement Agreement, to interpret, implement, administer and enforce the Settlement Agreement, in accordance with its terms.

Dkt. No. 34-1 at 2, 5-6.

## II.   Plaintiff's Claims in MDL 2179

Plaintiff unsuccessfully filed claims to recover from BP on behalf of a business he allegedly owned and operated, Hotel Security Specialists, LLC ("HSS"). The MDL Court's Dec. 17, 2020 Order, Dkt. No. 26823, provides a detailed history of Plaintiff's unsuccessful claims and subsequent attacks on the claims programs, and the Court provides a summary below.

Plaintiff submitted a claim to the Gulf Coast Claims Facility ("GCCF"), which was the entity established in 2010 to pay out BP's claims related to the 2010 DEEPWATER HORIZON explosion. On June 15, 2011, the GCCF issued Plaintiff a deficiency letter stating that it could not take any action because Plaintiff had failed to provide the required supporting documentation. On August 2, 2011, the GCCF denied Plaintiff's claim because he did not provide the requested documents by the deadline.

Years later, Plaintiff submitted claims to the CSSP. In 2014 and 2015, Plaintiff mailed three registration forms and two claim forms to the CSSP. The registration form required the claimant to list addresses for the business, the authorized business representative, and the current holder of rights. The claim form required only the business address. On the two claim forms and two of the registration forms, Plaintiff provided a Savannah, Georgia address for the business address. For the remaining registration form, Plaintiff provided no address for the business. On the registration forms, Plaintiff provided his prison address as the address for the authorized

3

business representative, or the current holder of rights, or both. None of these five submissions had the required supporting documentation. Denial notices were sent to the Savannah, Georgia address, and the denial notices explained that the claims and forms were incomplete because they lacked necessary documentation. Plaintiff did not request reconsideration from the incompleteness denials, and the claims were closed. Dkt. No. 34-1 at 25-28.

| **Claim Forms Submitted** | |
|---|---|
| **May 2014 Claim** | |
| May 2014 | Plaintiff submitted "Failed Business Economic Form" to CSSP. Business Address: Provided Savannah, GA address. |
| April 2015 | CSSP issued Incompleteness Notice on this claim, listing nine categories of documents that Plaintiff needed to provide. Notice mailed to Savannah, GA address. |
| May 2015 | CSSP issued Follow-up Incompleteness Notice stating that the CSSP had not received any of the outstanding documents. Notice mailed to Savannah, GA address. |
| July 2, 2015 | CSSP issued Incompleteness Denial Notice, stating that the claim had been denied because Plaintiff had failed to provide the required supporting documentation. Notice mailed to Savannah, GA address. |
| **May 2015 Claim** | |
| May 2015 | Plaintiff submitted "Failed Business Economic Form" to CSSP. Business Address: Provided Savannah, GA address. |
| September 2015 | CSSP issued Incompleteness Notice on this claim. Notice mailed to Savannah, GA address. |
| October 2015 | CSSP issued Follow-up Incompleteness Notice. Notice mailed to Savannah, GA address. |
| December 2015 | CSSP issued Incompleteness Denial Notice. Notice mailed to Savannah, GA address. |

| **Registration Forms** | |
|---|---|
| *Date Filed* | *Addresses Provided* |
| April 2014 | Business Address: Provided Savannah, GA address<br>Authorized Business Representative: Identified self as authorized business representative and provided Marion, NC prison address<br>Current Holder of Rights: Identified self as current holder of rights and provided Marion, NC prison address |
| May 2014 | Business Address: Provided Savannah, GA address<br>Authorized Business Representative: No information provided<br>Current Holder of Rights: Provided Marion, NC prison address |
| May 2015 | Business Address: No address provided.<br>Authorized Business Representative: Provided Nashville, NC prison address<br>Current Holder of Rights: No address provided. |

Plaintiff challenged these claim denials in actions filed in federal court. On May 7, 2019, Plaintiff filed a lawsuit in the Eastern District of Louisiana against the CSSP's Claims Administrator and BP, C No. 19-10295, *Larkin, et al. v. Juneau, et al.* (E.D. La.). In this lawsuit,

4

Plaintiff claimed that the CSSP's Claims Administrator and BP were grossly neglectful in mailing the notices to the Georgia address as opposed to the prisons where was incarcerated; that the CSSP intentionally discriminated against him; and that disparate impact was present in the statistical data used to prove a claim under the DHEDPS. Plaintiff's lawsuit was consolidated with MDL 2179. On December 16, 2020, the MDL Court dismissed the case with prejudice, finding that Plaintiff's claims were frivolous and failed to state a claim. The MDL Court first noted that the settlement agreement specifically prohibited the filing of a civil action against the CSSP or its Administrator, and construed Plaintiff's suit as a motion related to the interpretation, enforcement, or implementation of the Settlement. The MDL Court denied Plaintiff's suit on the merits for the following reasons. First, with respect to Plaintiff's complaint that the incompleteness notices were sent to the Savannah, Georgia address instead of his prison address, the MDL Court noted that it was Plaintiff who provided the Georgia address and that the CSSP's usual practice was to mail notices to the business address when the claimant is a business that is not represented by an attorney and does not use the online portal, as was the case for Plaintiff's submissions. Second, the MDL Court found that even if the CSSP erred in sending notices to Plaintiff's business address, it was neither discrimination nor gross negligence, and was, at most, a processing mistake that did not warrant the Court's intervention. In support of this finding, the MDL Court cited to *In re Deepwater Horizon*, 641 F. App'x 405, 408-09 (5th Cir. 2016), in which the Fifth Circuit found that the MDL Court's supervisory role gave it discretion to decide whether to review a challenge to the correctness of a discretionary administrative decision in the facts of a single claimant's case, and found no basis for reviewing Plaintiff's case given that the CSSP had already been subject to several external audits and investigations and remained under the MDL Court's continuing supervision. Finally, the MDL Court declined to order the CSSP to give Plaintiff another opportunity to submit the required supporting documentation because Plaintiff had not requested such an opportunity and because it seemed unlikely that Plaintiff could produce the necessary documentation given his failure to do so over the years. The MDL Court further stated that there was a question as to whether Plaintiff or his business were class members, given that all the addresses provided by Plaintiff were outside the geographic class boundary. Finally, the MDL

Court noted that Plaintiff filed his lawsuit in May 2019, over three years after the CSSP had denied and closed its last claim. Dkt. No. 34-1 at 29-33.

Over the next three years, Plaintiff challenged the MDL Court's rulings on multiple grounds in numerous motions, including alleging that class counsel had committed malpractice and failed in its duty to the class. In November 2022, Plaintiff filed two motion raising claims similar to the claims raised in this case. MDL 2179, Dkt. Nos. 27465, 27466. In Dkt. No. 27465, Plaintiff requested that he be allowed to resubmit his claim because, among other things, class representatives and class counsel had committed legal malpractice by failing to fulfill their duty to fairly and adequately protect his rights as a member of the class:

> The issue is fact-specific, centering around a breach of contractual obligation in the Deepwater Horizon Economic and Property Settlement Agreement and legal malpractice by the Claims Administrator, Class Representatives, Class Counsel, and Class Action Overseer.
> . . .
> Legal malpractice by class representatives and class counsel violated class certification and professional duty to fairly and adequate protect Claimant's rights as member of the class. . . .
> Registration Form, Reg-1B/V.I and Instruction Form 1B-6/V2 failed to define failed business and dissolved business as defined in Black Law Dictionary on Westlaw, causing Claimant grave trepidation.
> It defies logic that framers of Reg-1B/V.I would require the address of a business declared dissolved by the Georgia Secretary of State, four years prior, in September 2010.
> Adding to gross confusion, Instruction Form 1B-6/V-2 contains no reference to dissolved business. Despite the fact, Claimant exercised due diligence to file a failed business economic loss claim for a dissolved business.
> Due to the high level of competence and experience required of class representatives and class counsel, the failure to provide claimant a dissolved business economic loss claim forms defines common sense. But for the failure to do so, there would be no failure by GCCF and CSSF to notify Claimant at Claimant's prison address.
> Upon information and belief, counsel's actions and inactions were calculated, intentional, and self-serving. The primary motivating factor for flagrant legal malpractice and fraud was the $600 million class counsel fee paid by BP.

MDL 2179, Dkt. No. 27465 at 2-4. In Dkt. No. 27466, Plaintiff alleged that the Plaintiffs' Steering Committee ("PSC") for the MDL 2179 class and PSC member Elizabeth Cabraser had acknowledged that the settlement was a failure; and that it was legal malpractice and anticipatory breach of contract for the PSC to require claimants to provide a business address for dissolved businesses:

> Following the implementation of the BP-PSC settlement, PSC member Elizabeth Cabraser publicly stated that DHEPDS "was a model up until the day it wasn't."
> Cabraser's trust in DHEDPS was questioned for reason known only to Cabraser who joined in the 04-18-2012 joint motion for settlement (Doc. No. 6266),making

6

> DHEPDS a model for legal malpractice and future breach of agreement that led to the denial of Claimant's claim.
> Trust in DHEPDS was questioned the day Claimant attempted to file a failed business economic loss claim in 2014 for Hotel Security Specialists, LLC, a business registered in the State of Georgia, dissolved 2010.  The registration requested the address for the current holder of rights.  The claim form requested the business address.  Claimant provided a printout from Georgia Secretary of State to provide the former address for dissolved HSS, reasoning the address request was for that purpose.
> The fact PSC and BP required the former address for a business dissolved four years prior constituted legal malpractice by PSC and BP that caused future breach of agreement that led to the denial of Claimant's Claim.
> The 04-08-2012 joint motion for settlement failed to include a framework specific to a dissolved business claim, constituting legal malpractice by PSC and BP, causing future breach of agreement that led to the denial of Claimant's Claim.
> The fact PSC and BP failed to include a framework for GCCP and CSSP to notify the current holder of rights at Claimant's prison address to comply with Pretrial Order No. 60 (PTO #60) constituted legal malpractice by PSC and BP, causing future breach of agreement that led to the denial of Claimant's claim.
> . . .
> The fact PSC and BP failed to include a framework for that determined a dissolved business located outside the settlement's geographic boundaries that formerly provided security for high-end clients at hotels and casinos with the settlement's geographic boundaries fit the settlement's Exhibit 2 (Tourism Definition) constituted legal malpractice by PSC and BP, causing future breach of agreement that led to the denial of Claimant's claim.

MDL 2179, Dkt. No. 27466 at 2-3.

On December 9, 2022, the MDL Court denied these motions, stating that Plaintiff's claim had been dismissed and that the dismissal had been affirmed numerous times.  The MDL Court prohibited Plaintiff from filing additional pleadings without leave of court, and instructed Plaintiff that he would be subject to sanctions if he defied this prohibition.  Dkt. No. 34-1 at 35.

### III. Complaint

Plaintiff filed this action on or about January 4, 2024.  He sues nineteen attorneys and their law firms, who he identifies as the attorneys and law firms that made up the Plaintiffs' Steering Committee; and the John Doe attorneys that represented the DHEPDS and the BP entities. Plaintiff invokes diversity jurisdiction under 28 U.S.C. § 1332, alleging diversity of citizenship between the parties and an amount in controversy exceeding $75,000.  Dkt. No. 1 at 1.  Plaintiff is located in Nashville, North Carolina.  The various defendants are located in California, Illinois, Louisiana, Florida, Virginia, Alabama, Mississippi, New York, South Carolina, and Texas.  Dkt. No. 1 at 2-5.  Plaintiff alleges that venue is proper in this district because the agreement/framework challenged in this action was formulated by defendant Cabraser in this

7

1  district. Dkt. No. 1 at 1-2.

2  Plaintiff brings the following causes of action.

3  First, Plaintiff alleges that Defendants committed fraud by crafting a framework for
4  recovery under the DHEDPS that failed to protect Plaintiff's due process rights by concealing the
5  correct claim number and by omitting procedures whereby notices were sent to the authorized
6  business representative and current holder of rights at the address provided for these individuals.
7  Dkt. No. 1 at 6-13.

8  Second, Plaintiff alleges that Defendants committed legal malpractice by crafting a
9  defective settlement framework that prevented him from successfully filing a claim. The
10  settlement framework was defective because it required Plaintiff to provide a business address for
11  a dissolved business, only allowed for the business address to be the address of record, and did not
12  provide clear instructions regarding how to file a claim. Dkt. No. 1 at 13-15.

13  Third, Plaintiff alleges that Defendants breached DHEPDS by crafting a settlement
14  framework that (1) failed to mail notices to incarcerated claimants at their place of incarceration;
15  (2) did not require the CSSP to follow up with claimants who failed to respond to deficiency
16  notices; (3) required the CSSP to mail notices only to the business address; and (4) failed to
17  require the CSSP to mail notices to the addresses provided for the rights holder or the authorized
18  business representative. Dkt. No. 1 at 16-18.

## DISCUSSION

### I. Defendants' Motion for Transfer or Dismissal (Dkt. No. 34)

#### A. Legal Standard

28 U.S.C. § 1404(a) permits a district court to transfer any civil action to "any other district or division where it might have been brought" for the convenience of the parties and witnesses and "in the interest of justice." 28 U.S.C. § 1404(a). The Court engages in a two-step analysis in deciding a motion to transfer under this provision. First, it determines "whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) (quoting 28 U.S.C. § 1404(a)). If it is, the Court engages in an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v.*

1    *Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).
2    In this district, courts weigh private interest factors (such as the plaintiff's choice of forum and the
3    convenience of the parties, witnesses, and evidence) and public interest factors (such as the
4    familiarity of the court in each forum with the applicable law, the feasibility of consolidation with
5    other claims, any local interest in the controversy, and the cost differential of litigation in the two
6    forums) to determine if transfer is warranted. *See*, *e.g.*, *Jones v. GNC Franchising, Inc.*, 211 F.3d
7    495, 499 (9th Cir. 2000); *Perez v. Performance Food Grp., Inc.*, No. 15-cv-02390-HSG, 2017 WL
8    66874, at *2 (N.D. Cal. Jan. 6, 2017).

A motion to transfer venue lies within the broad discretion of the district court. *See*
*Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." (citation omitted)). The moving party bears the burden of showing that the transferee district is a "more appropriate forum." *See Jones*, 211 F.3d at 499.

**B.    Analysis**

Defendants argue that this action should be transferred to the Eastern District of Louisiana under either 28 U.S.C. § 1404 or 28 U.S.C. § 1406 for the following two reasons. First, Defendants argue that Plaintiff's claims arise out of the Deepwater Horizon class settlement and the DHEPDS provides that the MDL 2179 Court has exclusive jurisdiction over such claims. Second, Defendants argue that transfer to the Eastern District of Louisiana is consistent with the goals of convenience and fairness identified in the transfer statute. In the alternative, Defendants argue that the case could be dismissed with prejudice because the MDL Court has already disposed of the claims Plaintiff raises here with prejudice. Defendants also note that (1) Plaintiff appears to be unable to prove his loss, as he has filed multiple claims and lawsuits regarding his alleged business loss in the past decade but never provided the required documentation of loss, and (2) Plaintiff's challenges to the DHEPDS and the denials of his claims have been considered on the merits and rejected by various courts. Finally, Defendants note that the MDL-court appointed counsel and settlement counsel, including Defendants, lived in the Eastern District of Louisiana while working on and negotiating the Deepwater Horizon litigation and negotiating the

9

class settlement. *See generally* Dkt. Nos. 34, 38.

Plaintiff's pleadings opposing the transfer, Dkt. Nos. 37, 39, repeat variations on the same argument: his claims were improperly denied. His handwriting is challenging to read. The Court summarizes Plaintiff's arguments to the best of its ability.

The crux of Plaintiff's claims is that (1) the CSSP framework is fundamentally flawed because it did not provide for sending incompleteness notices to the authorized business representative or the current holder of rights, and failed to provide a clear definition for a claimant outside the geographic class boundary; (2) Defendants committed fraud and malpractice in putting together such a framework despite knowing its flaws; and (3) Defendants conspired to hide the flawed nature of the Settlement Agreement. He argues that the Settlement Agreement's flawed nature is proven by the MDL Court's December 16, 2020 Order dismissing the denials of his claim as an error or a processing mistake and condoning such errors and processing mistakes; and by Defendants misstating his current place of incarceration.

Plaintiff argues that that the Eastern District of Louisiana is the wrong venue for this action for the following reasons. First, Plaintiff argues that the MDL Court lacks the authority to modify the flawed framework crafted by Defendants, as the MDL 2179 Court has already found the settlement that generated the framework to be fair, reasonable and adequate and because Fed. R. Civ. P. 23(e) prohibits "the MDL Court from modifying the agreement or adjudicating any issues that fail to challenge the MDL Court's exclusive authority to interpret, implement, administer, or enforce the agreement." Dkt. No. 37 at 3. Second, Plaintiff argues that transferring this case to the Eastern District of Louisiana would be irreparably prejudicial because the MDL Court is consumed with bringing DHEDPS to a close and therefore uninterested in protecting his right to be treated fairly.

Plaintiff argues that this district is the proper venue for this action for the following reasons. First, Plaintiff argues that this Court has jurisdiction over this claim because of this Court's "conspiracy jurisdiction" and California's long-arm statute. Second, Plaintiff argues that the relevant actions took place in this district because defendant Cabraser and her law firm negotiated much of the DHEPDS settlement from their offices in California. Third, Plaintiff

10

argues that "logically" BP would prefer to have this matter heard in this court and that transferring the action to the Eastern District of Louisiana would deny BP the ability to be heard regarding these claims. Finally, Plaintiff argues that this district is the proper venue because it has a rich history of protecting the rights of the incarcerated.

The Court GRANTS the motion to transfer venue to the Eastern District of California.

As an initial matter, this action could have been brought in the Eastern District of Louisiana, which is a prerequisite for transfer of venue under either Section 1404 or Section 1406. The Eastern District of Louisiana would have subject matter jurisdiction over the claims raised, as they allege a breach of, or misconduct in relation to, the class action settlement agreement negotiated in MDL 2179. The Eastern District of Louisiana is also a proper venue for the claims. Venue generally is proper in a judicial district in which (1) any defendant resides, if all defendants are residents of the state in which the district is located; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) any defendant is subject to the court's personal jurisdiction, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b). Here, a number of the defendants reside in the Eastern District of Louisiana, and the settlement agreement at issue was negotiated in the Eastern District of Louisiana, even if some of the attorneys participated in the negotiations from outside the district.

Second, transfer is appropriate under Section 1404(a). The Eastern District of Louisiana has a far greater relationship to this action than this district because the agreement at issue is the DHEPDS, which was negotiated in MDL 2179 in the Eastern District of Louisiana. This district is not more convenient for Plaintiff than the Eastern District of Louisiana, since he is incarcerated in North Carolina. Plaintiff argues that transferring this case to the Eastern District of Louisiana would be prejudicial because the issue is the legitimacy of the settlement framework, and the Eastern District of Louisiana has already found the framework to be just, reasonable, and fair. However, the fact that a court has already ruled against a litigant does not make a venue inconvenient or establish that venue is lacking. Rather, it implies that the litigant's arguments may be barred by res judicata. Private interests also favor transfer to the Eastern District of Louisiana,

as the settlement framework pertains to a major litigation conducted there, and the underlying incident and related damages occurred in, or adjacent to, that district. Public interests also favor transfer to the Eastern District of Louisiana, as it would be inappropriate for this Court to effectively relitigate disputes about a settlement framework that does not affect its own citizens. Justice requires that this action be transferred to the Eastern District of Louisiana.

The Court this finds that transfer of this action to the Eastern District of Louisiana under 28 U.S.C. § 1404(a) is appropriate.[1] The Court therefore GRANTS Defendants' request to transfer this case to the Eastern District of Louisiana. Dkt. No. 34.

## CONCLUSION

For the reasons set forth above, the Court ORDERS as follows.

1. The Court GRANTS Defendants' request to transfer this case to the Eastern District of Louisiana under 28 U.S.C. § 1404(a). Dkt. No. 34.

2. The Court DENIES as moot Plaintiff's request to be relieved of service, Dkt. No. 36; Plaintiff's motion to stay proceedings pending appellate review, Dkt. No. 40; Plaintiff's motion for contempt and sanctions, Dkt. No. 41, and Plaintiff's motion for a preliminary injunction, Dkt. No. 44.

3. The Clerk is directed to TRANSFER this action to the Eastern District of Louisiana.

This order terminates Dkt. Nos. 34, 36, 40, 41, 44.

**IT IS SO ORDERED.**

Dated: 8/22/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[1] The Court declines to reach whether this case was filed in the wrong venue under 28 U.S.C. § 1406. However, the Court notes that despite Plaintiff recasting his claims as state-law claims of fraud, legal malpractice, and breach of agreement, those claims are duplicative of the ones he has previously raised in the Eastern District of Louisiana. *Compare* Dkt. No. 1 *with* MDL 2179, Dkt. Nos. 27465, 27466. The MDL Court's December 21, 2012 Order specifically retained exclusive jurisdiction to hear challenges to the administration and enforcement of the Settlement Agreement. Dkt No. 34-1 at 2, 5-6.

12